**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**RICHARD BULOT, ET AL.**                          **CIVIL ACTION**

**VERSUS**                                                    **NO. 15-1158**

**ANA WELCH, ET AL.**                               **SECTION "B"(4)**

<u>**ORDER AND REASONS**</u>

Before the Court are two motions filed by the Defendants in this matter: (1) Ana Welch and David Welch's (collectively "the Welches") Motion for Summary Judgment; and (2) a Motion for Partial Summary Judgment filed by all three Defendants, the Welches and Kamach, LLC (collectively "Defendants"). Rec. Docs. 26, 27. Plaintiffs Richard Bulot and Hometown Consulting, Inc. ("Plaintiffs") timely filed a single opposition memorandum addressing both motions. For the reasons discussed below,

**IT IS ORDERED** that the Welches' Motion for Summary Judgment is **GRANTED.**

**IT IS FURTHER ORDERED** that the Defendants' Motion for Partially Summary Judgment is **GRANTED.**

I.     <u>**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**</u>

This case arises out of a dispute over the sale of seafood boiling pots allegedly sold by Defendants to a number of establishments, including ACE Hardware ("ACE") locations around south Louisiana. Plaintiff Richard Bulot ("Bulot") alleges that he learned through a personal acquaintance, Larry Gillio, that ACE

1

stores in south Louisiana were looking to find a new vendor for various sizes of aluminum boil pots. Rec. Docs. 1 at 3; 28-1 at 1. Bulot claims that he then contacted David Welch to advise him of the opportunity and "develop a partnership to create a product line of boiling pots, burners, and accessories." Rec. Doc. 1 at 3. Bulot further claims that he collaborated with Welch to form an enterprise called "Fleur de Lis Boling Pots" (hereinafter "FDL"), which arranged with a Chinese firm to manufacture various sizes of boiling pots according to the specifications required by ACE. *Id*. On the contrary, Defendants maintain that the parties to this lawsuit never formed a partnership of any kind for any purpose. Rec. Doc. 26-7 at 2.

After allegedly forming the enterprise with Welch, Bulot claims that he and his company, Hometown Consulting, Inc. ("Hometown"), developed a unique logo to market the boiling pots—three crustaceans (a crawfish, shrimp, and crab) forming of a Fleur de Lis shape that Bulot refers to as "Fleur Delicious." Rec. Doc. 1 at 3. Bulot further maintains that, upon David Welch's suggestion, he agreed to temporarily let a business owned by David and Ana, Kamach, LLC ("Kamach"), transact all of the FDL business. *Id*. However, he alleges that the agreement to use Kamach was subject to their partnership agreement to split all profits from the sales of boil pots and that the parties would later on form a new entity or make Bulot a member of Kamach. *Id*. Plaintiffs assert

2

that ACE placed an order for $47,025.94 worth of FDL boiling pots in June 2009. *Id*. at 4. Bulot contends that Kamach filled and delivered the order but that he never received the profits owed to him by Kamach and the Welches. *Id*. Defendants wholly deny that allegation. Rec. Doc. 1 at 4.

According to Bulot, ACE continued placing orders with Kamach for FDL boiling pots but he continued to receive no profits. *Id*. In March 2012, he demanded that Defendants immediately cease using his Fleur Delicious design in marketing and selling the boiling pots as it violated his copyright and trademark rights. Plaintiffs contend that Defendants continue to use the design in marketing, advertising, and selling the pots. *Id*. Defendants present a different story.

They claim that Bulot was a customer of a now-defunct LLC, Kamach Enterprises, LLC (hereinafter "KE"), of which Ana Welch was the only member. Rec. Doc. 6 at 11. They concede that Bulot tipped off David Welch (an officer and agent of KE) to ACE's interest in boiling pots. *Id*. Accordingly, Welch claims that he contacted ACE independently and set up a meeting with Connie Fischer, the owner of an ACE location in Laplace, Louisiana. *Id*. Defendants maintain that it is Fischer who originally created the Fleur Delicious logo and that Bulot only consulted with an artist to render the final version. *Id*. at 11-12. Defendants further claim that KE started selling boil pots using the Fleur Delicious logo to ACE in June

2009. *Id*. at 12. However, without explaining why, Defendants assert that KE stopped selling boil pots altogether in November 2011. *Id*. Thereafter, Kamach began selling the pots using a new logo that also depicts the same three crustaceans within a Fleur de Lis (hereinafter "Logo Two"). *Id*. In May 2012, Hometown applied for a trademark of Fleur Delicious. *Id*. In June 2012, Kamach then filed for a trade name registration for Logo Two. *Id*. Bulot then registered a copyright for Fleur Delicious in June 2013. *Id*. at 13.

Finally, Bulot and Hometown filed suit against Defendants for copyright and trademark infringement, breach of contract, and conversion. Rec. Doc. 1 at 5-6. They also seek an accounting of all revenues received by Defendants related to the boil pot enterprise. *Id*. at 5. Defendants answered and asserted a counterclaim seeking attorneys' fees and a declaratory judgment that none of them infringed upon trademarks or copyrights owned by the Plaintiffs. Rec. Doc. 6 at 15. Defendants now move for summary judgment.

## II.  <u>THE PARTIES' CONTENTIONS</u>

The Defendants' motion for partial summary judgment seeks dismissal of Plaintiffs' breach of contract and conversion claims. Rec. Doc. 26. First, Defendants claim that Plaintiffs have no evidence to support any of the three elements of a breach of contract claim. Rec. Doc. 26-1 at 10. Second, they argue that

Plaintiffs' conversion claim should be dismissed because they have no evidence of a partnership agreement, which is a prerequisite to their conversion claim. *Id*. at 11. Therefore, the motion urges the Court to dismiss both the breach of contract and conversion claims against all three Defendants.

Additionally, the Welches seek dismissal of the trademark and copyright infringement claims against themselves only because all of the pots were allegedly sold by Kamach, LLC. Rec. Doc. 27 at 1. They claim that there is no genuine issue of material fact that would provide a basis holding them liable as members of Kamach for the conduct of Kamach. *Id*. at 8. They contend that the fact that Kamach was not in good standing with the Louisiana Secretary of State when suit was filed is irrelevant because Kamach is currently in good standing and has active status with the Secretary of State. *Id*. Additionally, the Welches maintain that they are not alter-egos of Kamach and cannot be held personally liable on that ground either. Accordingly, they urge the Court to dismiss all trademark and copyright claims against them, leaving only trademark and copyright claims pending against Kamach.

Plaintiffs' opposition raises a host of issues without directly addressing the arguments set forth in Defendants' motions. First, Plaintiffs contend that summary judgment is altogether inappropriate at this time because they have failed to take any depositions. Rec. Doc. 28 at 1. Second, they claim that

the motion for summary judgment on the contract and conversion claims should be denied because affidavits from third parties and emails between Bulot and the Welches demonstrate that a partnership existed. *Id.* at 2. Finally, they claim that the Welches' motion for summary judgment should be denied because the Welches caused the LLC to infringe on the Plaintiffs intellectual property rights. *Id.*

### III. **SUMMARY JUDGMENT STANDARD**

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also TIG Ins. Co. v. Sedgwick James of Washington*, 276 F.3d 754, 759 (5th Cir. 2002). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant must point to "portions 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. If and when the movant carries this burden, the non-movant must then go beyond the pleadings and present other evidence to

6

establish a genuine issue. *Matsushita Elec. Indus. Co. V. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, "where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir. 1994). Conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc.*, 7 F.3d 1203, 1207 (5th Cir. 1993).

## IV. **DISCUSSION**

Plaintiffs first argue that the Court should deny both motions because no depositions have taken place and thus defendants have not been required to admit or deny any of their statements under oath. Rec. Doc. 28 at 1. This argument is entirely insufficient. Under the scheduling order, depositions for use at trial and all discovery had to be completed by May 17, 2016. Rec. Doc. 11. Plaintiffs' fail to explain why they have yet to depose the defendants or any other individuals.[1] Moreover, prior to the discovery deadline, the parties jointly moved to extend several other deadlines due to delays in the preparation of expert reports. Rec. Doc. 20. However, they made no mention of a need for

---

[1] The instant motions and Plaintiffs' opposition were all filed after the discovery deadline.

additional time to complete depositions or any other discovery.[2] *Id*. While Federal Rule of Civil Procedure 56(d) allows a court to deny a motion for summary judgment when facts are unavailable, Plaintiffs have failed to show that they even attempted to take depositions, let alone diligently pursued the relevant information. *See Int'l Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1267 (noting that if "the nonmoving party has not diligently pursued discovery of [the relevant] evidence, the court need not accommodate the party's belated request" under Rule 56(d)). Therefore, Rule 56(d) cannot be used as a means to prevent summary judgment in this case.

### a. Defendants' Motion for Summary Judgment on the Contract and Conversion Claims

Defendants move to dismiss Plaintiffs' breach of contract claim on the ground that they cannot show any of the required elements. Plaintiffs claim in conclusory fashion that "[i]t is plain from [certain emails between the parties], and needs no elaboration, that defendants either actually agreed to be Mr. Bulot's business partners, or else did a superb job of deceiving him into believing that they did." Rec. Doc. 28 at 6. Plaintiffs then present seven pages of emails that allegedly show an agreement between the parties to work together for a "common goal and mutual

---

[2] The parties also moved to continue trial so that they could pursue settlement. That motion, which was ultimately denied without prejudice, also failed to address any need for additional time to complete discovery. Rec. Doc. 15.

profit." *Id*. Under Louisiana law "[t]he essential elements of a breach of contract claim are: (1) the obligor's undertaking an obligation to perform; (2) the obligor failed to perform the obligation (the breach); and (3) the failure to perform resulted in damages to the obligee." *Hamilton v. Dennis*, No. 09-7029, 2011 WL 2844211, at *5 (E.D. La. July 15, 2011). The first issue is whether Defendants ever undertook an obligation to perform.

Here, the Plaintiffs' breach claim does not explicitly identify the contract underlying it. However, the complaint only seems to reference a single agreement between Bulot and the Defendants—ostensibly a partnership agreement to form Fleur De Lis Boiling Pots:

> Plaintiff Bulot, thereafter contacted Defendant David Welch, advising of this opportunity and suggesting that they develop *a partnership* to create a product line of boiling pots . . . . As a result of Bulot's marketing to ACE hardware and his collaboration with Defendant, David Welch, arrangements were made through a Chinese firm to manufacture various sizes of aluminum boiling pots according to the specifications required by ACE Hardware. *This new enterprise was called "Fleur De Lis Boiling Pots."*

Rec. Doc. 1 at 5 (emphasis added). Plaintiffs' opposition also supports this conclusion by claiming that Defendants "agreed to be Mr. Bulot's business partners." Rec. Doc. 28 at 6. Accordingly,

the Court will address whether any genuine issues of material fact exist with respect to the formation of a partnership.[3]

Louisiana Civil Code article 2801 defines a partnership as "a juridical person, distinct from its partners, created by a contract between two or more persons to combine their efforts or resources in determined proportions and to collaborate at mutual risk for their common profit or commercial benefit." A partnership agreement need not be in writing and may be inferred from circumstantial evidence. *Gulf S. Machine, Inc. v. Am. Standard, Inc.*, No. 97-65, 1998 WL 373408, at *3 (E.D. La. July 2, 1998). However, the Supreme Court of Louisiana, in the seminal case *Darden v. Cox*, set out several elements that are "necessary to a business relationship before it can be considered a partnership as between the parties to it." 123 So. 2d 68, 71 (La. 1960). Those three elements include: (1) mutual consent to form a partnership and to participate in the profits which may accrue; (2) sharing of the venture's profits and losses; and (3) "the property or stock of the enterprise must form a community of goods in which each party has a proprietary interest." *Id. See also Taylor v. Getty Oil Co.*, 637 F. Supp. 866, 888 (E.D. La. 1986). "Even if the parties call their relationship a partnership, and agree that they gave their

---

[3] At one point in their opposition, Plaintiffs also describe the business relationship as a joint venture. Rec. Doc. 28 at 20. Whether Plaintiffs claim it was a joint venture or a partnership is not significant, though, because the essential elements are the same for both. *See Marchand v. Mull*, 2008-0584, p. 3 (La. App. 1 Cir. 10/14/08); 2008 WL 4567280.

mutual consent to form it, it will not be considered a partnership, as between the parties, unless it is evident that the other two factors result from their agreement." *Darden*, 123 So. 2d at 71.

With respect to the first factor, Plaintiffs submit several pieces of evidence tending to show that the parties mutually consented to form a partnership. First, Plaintiffs submit numerous third party affidavits in which certain businesspersons aver that Bulot and David Welch identified themselves as business partners with respect to the sale of the boiling pots. *See* Rec. Docs. 28-2 at 2; 28-3 at 2; 28-4 at 2; and 28-5 at 2. Additionally, the emails between Bulot and David Welch tend to show that they collaborated in coordinating the sales to ACE, providing further circumstantial evidence to support the first element. *See* Rec. Doc. 28 at 7-16. There is also one email from Bulot to an employee at Rouse's (on which Welch is copied) wherein Bulot explicitly refers to Welch as his partner. Rec. Doc. 28 at 14. Accordingly, the Court finds that Plaintiffs have raised a genuine issue of material fact as to the first element—whether they mutually consented to enter into a partnership.

The next issue is whether Plaintiffs have any evidence that the parties agreed to share profits and losses. Here, Plaintiffs supply minimal relevant evidence and fail to show how the emails demonstrate the existence of a partnership. First, there is a June 03, 2009 email from Welch to Bulot in reference to costs in which

11

Welch asks Bulot what he wants to do relative to additional costs. Rec. Doc. 28 at 13. There was then another email sent from Welch to Bulot on January 19, 2010 in which Welch states: "Richie, I have to pull out of all dealings from a banking or ownership standpoint . . . . However, if you want to fund or have funded and purchase any of the products then I can sell directly to you and put it on a plate." Rec. Doc. 28 at 13. These emails could be construed, with some creativity, to show that the parties had an intent to share losses to some extent. However, none of the emails demonstrate that the parties ever agreed to share profits.

In fact, the only email that discusses profits is one from David Welch in which he states that: "From the beginning, it was an understanding that if we developed any business we would discuss any benefits." Rec. Doc. 28 at 15. Plaintiffs submit no other evidence outside of these emails and the aforementioned affidavits. There is no evidence of an oral or written agreement to share profits. Moreover, by his own admission, Bulot never actually shared in the profits of the venture. Plaintiffs only reiterate the conclusory claims made in their pleadings. Thus, there is insufficient evidence before the Court for reasonable jury to conclude that the parties ever intended to share profits. *See In re Anderson*, 539 B.R. 277, 284 (W.D. La. Oct. 2, 2015) (granting summary judgment on the same grounds). The evidence only shows that the parties agreed to discuss profits at a later date

12

if the boiling pots sold successfully. There was thus no agreement to share profits—"the one indispensable requirement for the formation of a partnership." 7 La. Civ. L. Treatise, Business Organizations § 1.18.

Finally, Plaintiffs have failed to point this Court's attention to, and the Court has not identified, any portion of the emails or affidavits that show that the parties each had a proprietary interest in a community of goods. In fact, Plaintiffs' complaint concedes that all business ran through Kamach, meaning he admittedly had no proprietary interest in the property because he had no ownership in Kamach. Accordingly, the second and third elements for formation of a partnership are not met. The fact that the parties may have labeled their relationship a partnership, while relevant, is not controlling. *See* 7 La. Civ. L. Treatise, Business Organizations § 1.12 (noting it is well established "that the label attached by the parties to their relationship will not control whether it is to be treated, legally, as a partnership.").

As such, this Court finds that no underlying partnership agreement existed sufficient to support a breach of contract claim. *See Darden*, 123 So. 2d at 71. To the extent that Plaintiffs' breach of contract claim rests upon some other type of business relationship other than a partnership or joint venture, Plaintiffs have failed to adequately identify and substantiate the obligations allegedly owed by Defendants under any such agreement.

13

Accordingly, Plaintiffs' breach of contract claim must be dismissed.

Plaintiffs further claim that Defendants converted for themselves certain property and money belonging to Plaintiffs. Defendants argue that this claim must also be dismissed because it rests upon the allegation that a valid partnership existed and thus some profits were owed to Plaintiffs. Rec. Doc. 26-1 at 11. Plaintiffs' opposition memorandum does not meaningfully challenge this assertion. *See* Rec. Doc. 28. Plaintiffs' conversion claim is based upon Defendants' alleged failure to properly share profits based on their alleged partnership. Rec. Doc. 1 at 5-6. Because Plaintiffs have failed to establish the existence of a partnership agreement or any other type of business relationship for which they were supposedly owed profits, their conversion claim must necessarily fail as well.

### b. **The Welches Motion for Summary Judgment on the Trademark Claims**

The Welches move to dismiss the Plaintiffs' trademark claims against them because they claim Kamach sold all of the boiling pots with the allegedly infringing logo (Logo Two) and there is no basis for holding them liable for the actions of Kamach. Rec. Doc. 27-1 at 8. Plaintiffs do not directly counter this argument. Instead, they claim that David and Ana Welch caused Kamach to usurp

14

an opportunity from the joint venture they had with Bulot, thus making them liable for the torts of Kamach. Rec. Doc. 28 at 20.

Plaintiffs' argument must fail because, for the reasons discussed above, they have failed to demonstrate the existence of a partnership or joint venture. Without establishing a valid partnership or other recognized business relationship, Plaintiffs cannot show that they were owed any duties by Defendants. *See* 7 La. Civ. La. Treatise, Business Organizations § 6.05 (discussing how certain fiduciary duties arise out of the partnership). Moreover, Plaintiffs present absolutely no evidence to show that either of the Welches marketed, advertised, imported or sold boiling pots with the allegedly infringing logo independently. In fact, Plaintiffs concede that the business ran through Kamach. They also present no evidence to show that the Welches should be deemed alter-egos of Kamach and thus liable for its torts. Accordingly, Plaintiffs have presented no evidence to support any legal basis for holding the Welches liable for trademark or copyright infringement. They only echo the conclusory allegations included in their complaint and summarily rebut those of Defendants, which is insufficient to avoid summary judgment. *See Travelers Ins. Co.*, 7 F.3d at 1207. Therefore, the infringement claims against the Welches must be dismissed, leaving only such claims against Kamach.

## V.   <u>CONCLUSION</u>

For the reasons discussed above,

    **IT IS ORDERED** that the motion for Partial Summary Judgment is **GRANTED**, dismissing all breach of contract and conversion claims against all Defendants.

    **IT IS FURTHER ORDERED** that the Welches' Motion for Summary Judgment is **GRANTED**, dismissing all trademark and copyright infringement claims against Ana and David Welch but leaving such claims pending against Kamach, LLC.

    New Orleans, Louisiana, this 16th day of June, 2016.


                                  _____
                                  UNITED STATES DISTRICT JUDGE

16